**Fill in this information to identify the case:**

Debtor 1  GerVaise Guyton
Debtor 2
(Spouse, if filing)
United States Bankruptcy Court  Northern District of Illinois
Case number: 19-04458

FILED
U.S. Bankruptcy Court
Northern District of Illinois
3/21/2019


EXHIBIT A

## Official Form 410
## Proof of Claim

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1: Identify the Claim

**1. Who is the current creditor?**
Belles Terres Homeowners Association
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**
☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?
Belles Terres Homeowners Association
Name
Keay & Costello, P.C.
128 S. County Farm Road
Wheaton, IL 60187

Contact phone  630-690-6446
Contact email  ben@keaycostello.com

Where should payments to the creditor be sent? (if different)
Name _____
Contact phone _____
Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one): _____

**4. Does this claim amend one already filed?**
☑ No
☐ Yes. Claim number on court claims registry (if known) _____  Filed on _____ MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**
☑ No
☐ Yes. Who made the earlier filing? _____

Official Form 410                                      Proof of Claim                                      page 1

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| | |
|---|---|
| 6. Do you have any number you use to identify the debtor? | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |
| 7. How much is the claim? | $ 12652.84  Does this amount include interest or other charges?<br>☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
| 8. What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>Association common expense |
| 9. Is all or part of the claim secured? | ☐ No<br>☑ Yes. The claim is secured by a lien on property.<br>**Nature of property:**<br>☑ Real estate.  If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:** Association lien<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:** $ 55000.00<br>**Amount of the claim that is secured:** $ 12652.84<br>**Amount of the claim that is unsecured:** $ 0.00  (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:** $ _____<br><br>**Annual Interest Rate** (when case was filed) _____ %<br>☑ Fixed<br>☐ Variable |
| 10. Is this claim based on a lease? | ☑ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition. $ _____ |
| 11. Is this claim subject to a right of setoff? | ☑ No<br>☐ Yes. Identify the property: _____ |

Official Form 410  Proof of Claim  page 2

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply:* | Amount entitled to priority |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $ _____ |
| | * Amounts are subject to adjustment on 4/1/19 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157 and 3571.

Check the appropriate box:

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  3/21/2019
MM / DD / YYYY

/s/ Benjamin J. Rooney

Signature

Print the name of the person who is completing and signing this claim:

Name: Benjamin J. Rooney
First name  Middle name  Last name

Title:

Company: Keay & Costello, P.C.
Identify the corporate servicer as the company if the authorized agent is a servicer

Address: 128 S. County Farm Road
Number Street
Wheaton, IL 60187
City State ZIP Code

Contact phone: 630-690-6446
Email: ben@keaycostello.com

Official Form 410  Proof of Claim  page 3

| DATE | ACTIVITY | AMOUNT | BALANCE |
| --- | --- | --- | --- |
| 05/30/2018 | Pledge #5803 | 29.35 | 863.97 |
| 06/01/2018 | Pledge #6224 | 262.11 | 1,126.08 |
| 07/01/2018 | Pledge #6361 | 262.11 | 1,388.19 |
| 08/01/2018 | Pledge #6588 | 262.11 | 1,650.30 |
| 08/08/2018 | Pledge #6801 | 31.90 | 1,682.20 |
| 09/01/2018 | Pledge #7023 | 262.11 | 1,944.31 |
| 10/01/2018 | Pledge #7264 | 262.11 | 2,206.42 |
| 10/01/2018 | Pledge #7346 | 31.90 | 2,238.32 |
| 11/01/2018 | Pledge #7707 | 262.11 | 2,500.43 |
| 12/01/2018 | Pledge #7956 | 262.11 | 2,762.54 |
| 12/03/2018 | Pledge #8039 | 100.00 | 2,862.54 |
| 12/04/2018 | Pledge #8174 | 36.95 | 2,899.49 |
| 01/01/2019 | Pledge #8395 | 263.42 | 3,162.91 |
| 02/01/2019 | Pledge #8627 | 263.42 | 3,426.33 |
| 02/06/2019 | Pledge #8847 | 31.80 | 3,458.13 |
| | PRE-PETITION ACCOUNT #1 - TRANSFER | $8,794.71 | 12,252.84 |
| 3-21-19 | Legal Fee - BK Letter & P.O.C. | 400.00 | 12,652.84 |

**Belles Terres Homeowners Association**
1080 N. Farnsworth Ave.
Aurora, IL 60505



# Statement

**TO**
Ms. GERVAISE GUYTON
1110 N.FARNSWORTH AVE.
UNIT #105
ILLINOIS
AURORA, IL 60505

STATEMENT NO. 4443
DATE 03/19/2019
TOTAL DUE $3,721.55
ENCLOSED

| DATE | ACTIVITY | AMOUNT | BALANCE |
|---|---|---:|---:|
| 12/31/2015 | Balance Forward | | 0.00 |
| 12/01/2016 | Pledge #ASSES | 255.71 | 255.71 |
| 05/05/2017 | Payment | -255.71 | 0.00 |
| 05/11/2017 | Pledge #1722 | 65.00 | 65.00 |
| 05/11/2017 | Payment | -65.00 | 0.00 |
| 05/30/2017 | Pledge #1743 | 97.58 | 97.58 |
| 06/30/2017 | Pledge #2213 | 15.00 | 112.58 |
| 06/30/2017 | Payment | -15.00 | 97.58 |
| 07/31/2017 | Pledge #2481 | 76.42 | 174.00 |
| 08/29/2017 | Payment #1015978 | -500.00 | -326.00 |
| 08/29/2017 | Payment #1015979 | -500.00 | -826.00 |
| 08/29/2017 | Journal Entry #81: CREDIT FROM POST ACCT. TO PRE ACCT. | 494.45 | -331.55 |
| 08/29/2017 | Journal Entry #82: CREDIT FROM POST ACCT. TO PRE ACCT. | 402.42 | 70.87 |
| 09/29/2017 | Payment #9026533327 | -1,000.00 | -929.13 |
| 09/29/2017 | Journal Entry #83: CREDIT FROM POST ACCT. TO PRE ACCT. | 667.48 | -261.65 |
| 10/01/2017 | Pledge #3248 | 261.65 | 0.00 |
| 12/01/2017 | Pledge #3993 | 261.65 | 261.65 |
| 12/06/2017 | Payment | -261.65 | 0.00 |
| 03/01/2018 | Pledge #5566 | 262.11 | 262.11 |
| 03/30/2018 | Pledge #5144 | 48.29 | 310.40 |
| 04/01/2018 | Pledge #5567 | 262.11 | 572.51 |
| 05/01/2018 | Pledge #6225 | 262.11 | 834.62 |

| Current Due | 1-30 Days Past Due | 31-60 Days Past Due | 61-90 Days Past Due | 90+ Days Past Due | Amount Due |
|---|---|---|---|---|---|
| 0.00 | 295.22 | 526.84 | 399.06 | 2,500.43 | **$3,721.55** |

| DATE | ACTIVITY | AMOUNT | BALANCE |
|---|---|---|---|
| 05/02/2017 | Pledge #1692: LEGAL FEES FOR APRIL | 300.00 | 6,431.06 |
| 06/01/2017 | Pledge #2025 | 0.00 | 6,431.06 |
| 07/01/2017 | Pledge #2338 | 0.00 | 6,431.06 |
| 08/01/2017 | Pledge #2649 | 0.00 | 6,431.06 |
| 08/29/2017 | Journal Entry #87: CREDIT FROM POST ACCT. TO PRE ACCT. | -494.45 | 5,936.61 |
| 08/29/2017 | Journal Entry #88: CREDIT FROM POST ACCT. TO PRE ACCT. | -402.42 | 5,534.19 |
| 09/01/2017 | Pledge #2951 | 0.00 | 5,534.19 |
| 09/06/2017 | Pledge #3105 | 781.00 | 6,315.19 |
| 09/29/2017 | Journal Entry #89: CREDIT FROM POST ACCT. TO PRE ACCT. | -667.48 | 5,647.71 |
| 09/29/2017 | Pledge #6452 | 243.75 | 5,891.46 |
| 09/29/2017 | Pledge #6453 | 167.25 | 6,058.71 |
| 09/29/2017 | Pledge #6454 | 477.50 | 6,536.21 |
| 09/29/2017 | Pledge #6455 | 225.00 | 6,761.21 |
| 10/04/2017 | Pledge #3412 | 112.12 | 6,873.33 |
| 11/01/2017 | Pledge #3686 | 261.65 | 7,134.98 |
| 11/28/2017 | Pledge #3796 | 118.84 | 7,253.82 |
| 01/01/2018 | Pledge #4347 | 262.11 | 7,515.93 |
| 01/01/2018 | Pledge #6227 | 262.11 | 7,778.04 |
| 01/03/2018 | Pledge #4438 | 100.00 | 7,878.04 |
| 01/26/2018 | Pledge #4469 | 76.67 | 7,954.71 |
| 02/06/2018 | Pledge #4766 | 300.00 | 8,254.71 |
| 03/01/2018 | Pledge #5039 | 0.00 | 8,254.71 |
| 03/05/2018 | Pledge #5129 | 240.00 | 8,494.71 |
| 04/01/2018 | Pledge #5339 | 0.00 | 8,494.71 |
| 04/03/2018 | Pledge #5432 | 300.00 | 8,794.71 |
| 05/01/2018 | Pledge #5691 | 0.00 | 8,794.71 |
| 06/01/2018 | Pledge #6011 | 0.00 | 8,794.71 * |



*PRE-PETITION ACCOUNT #1

| Current Due | 1-30 Days Past Due | 31-60 Days Past Due | 61-90 Days Past Due | 90+ Days Past Due | Amount Due |
|---|---|---|---|---|---|
| 0.00 | 0.00 | 0.00 | 0.00 | 8,794.71 | **$8,794.71** |

**Belles Terres Homeowners Association**
1080 N. Farnsworth Ave.
Aurora, IL 60505



# Statement

**TO**
MS. GERVAISE GUYTON
vince@keaycostello.com
1110 N. FARNSWORH
UNIT 105
AURORA, IL 60505

STATEMENT NO. 4444
DATE 03/19/2019
TOTAL DUE $8,794.71
ENCLOSED

| DATE | ACTIVITY | AMOUNT | BALANCE |
|---|---|---|---|
| 05/31/2016 | Balance Forward | | 1,416.21 |
| 06/01/2016 | Pledge #ASSES | 255.71 | 1,671.92 |
| 06/01/2016 | Pledge #legal #1 | 190.82 | 1,862.74 |
| 06/01/2016 | Pledge #legal #2 | 546.50 | 2,409.24 |
| 06/01/2016 | Pledge #legal #3 | 385.00 | 2,794.24 |
| 06/06/2016 | Pledge #WTR-MAR/MAY | 24.36 | 2,818.60 |
| 07/01/2016 | Pledge #ASSES | 255.71 | 3,074.31 |
| 08/01/2016 | Pledge #ASSES | 255.71 | 3,330.02 |
| 08/06/2016 | Pledge #WTR-MAY-JUL | 35.71 | 3,365.73 |
| 08/10/2016 | Payment #asses | -255.71 | 3,110.02 |
| 09/01/2016 | Pledge #ASSES | 255.71 | 3,365.73 |
| 09/06/2016 | Pledge #legal fees | 0.00 | 3,365.73 |
| 09/19/2016 | Pledge #WTR-JUL/SEP | 51.35 | 3,417.08 |
| 10/01/2016 | Pledge #ASSES | 255.71 | 3,672.79 |
| 11/01/2016 | Pledge #ASSES | 255.71 | 3,928.50 |
| 11/02/2016 | Pledge #10-105: Opening balance | 373.00 | 4,301.50 |
| 11/22/2016 | Pledge #WATER | 35.66 | 4,337.16 |
| 01/01/2017 | Pledge #ASSES | 261.65 | 4,598.81 |
| 01/30/2017 | Pledge #307 page fax | 79.81 | 4,678.62 |
| 02/01/2017 | Pledge #412 | 261.65 | 4,940.27 |
| 03/01/2017 | Pledge #797 | 261.65 | 5,201.92 |
| 03/28/2017 | Pledge #1006 | 355.48 | 5,557.40 |
| 04/01/2017 | Pledge #1203 | 0.00 | 5,557.40 |
| 04/05/2017 | Pledge #1427 | 573.66 | 6,131.06 |
| 05/01/2017 | Pledge #1605 | 0.00 | 6,131.06 |

| Current Due | 1-30 Days Past Due | 31-60 Days Past Due | 61-90 Days Past Due | 90+ Days Past Due | Amount Due |
|---|---|---|---|---|---|
| 0.00 | 0.00 | 0.00 | 0.00 | 8,794.71 | **$8,794.71** |

| DATE | ACTIVITY | AMOUNT | BALANCE |
|---|---|---:|---:|
| 11/19/2015 | Pledge #NOV-WTR | 40.43 | 90.43 |
| 12/01/2015 | Pledge #ASSES | 251.01 | 341.44 |
| 12/07/2015 | Payment | -251.01 | 90.43 |
| 01/01/2016 | Pledge #ASSES | 255.71 | 346.14 |
| 01/18/2016 | Pledge #WTR-NOV/JAN | 21.52 | 367.66 |
| 02/01/2016 | Pledge #ASSES | 255.71 | 623.37 |
| 03/01/2016 | Pledge #ASSES | 255.71 | 879.08 |
| 03/25/2016 | Receipt #KEY | 15.00 | 879.08 |
| 04/01/2016 | Pledge #ASSES | 255.71 | 1,134.79 |
| 04/04/2016 | Pledge #WTR-JAN/MAR | 25.71 | 1,160.50 |
| 05/01/2016 | Pledge #ASSES | 255.71 | 1,416.21 |
| 06/01/2016 | Pledge #ASSES | 255.71 | 1,671.92 |
| 06/01/2016 | Pledge #legal #1 | 190.82 | 1,862.74 |
| 06/01/2016 | Pledge #legal #2 | 546.50 | 2,409.24 |
| 06/01/2016 | Pledge #legal #3 | 385.00 | 2,794.24 |
| 06/06/2016 | Pledge #WTR-MAR/MAY | 24.36 | 2,818.60 |
| 07/01/2016 | Pledge #ASSES | 255.71 | 3,074.31 |
| 08/01/2016 | Pledge #ASSES | 255.71 | 3,330.02 |
| 08/06/2016 | Pledge #WTR-MAY-JUL | 35.71 | 3,365.73 |
| 08/10/2016 | Payment #asses | -255.71 | 3,110.02 |
| 09/01/2016 | Pledge #ASSES | 255.71 | 3,365.73 |
| 09/06/2016 | Pledge #legal fees | 0.00 | 3,365.73 |
| 09/19/2016 | Pledge #WTR-JUL/SEP | 51.35 | 3,417.08 |
| 10/01/2016 | Pledge #ASSES | 255.71 | 3,672.79 |
| 11/01/2016 | Pledge #ASSES | 255.71 | 3,928.50 |
| 11/02/2016 | Pledge #10-105: Opening balance | 373.00 | 4,301.50 |
| 11/22/2016 | Pledge #WATER | 35.66 | 4,337.16 |
| 01/01/2017 | Pledge #ASSES | 261.65 | 4,598.81 |
| 01/30/2017 | Pledge #307 page fax | 79.81 | 4,678.62 |
| 02/01/2017 | Pledge #412 | 261.65 | 4,940.27 |
| 03/01/2017 | Pledge #797 | 261.65 | 5,201.92 |
| 03/28/2017 | Pledge #1006 | 355.48 | 5,557.40 |
| 04/01/2017 | Pledge #1203 | 0.00 | 5,557.40 |
| 04/05/2017 | Pledge #1427 | 573.66 | 6,131.06 |
| 05/01/2017 | Pledge #1605 | 0.00 | 6,131.06 |
| 05/02/2017 | Pledge #1692: LEGAL FEES FOR APRIL | 300.00 | 6,431.06 |
| 06/01/2017 | Pledge #2025 | 0.00 | 6,431.06 |
| 07/01/2017 | Pledge #2338 | 0.00 | 6,431.06 |
| 08/01/2017 | Pledge #2649 | 0.00 | 6,431.06 |

| Current Due | 1-30 Days Past Due | 31-60 Days Past Due | 61-90 Days Past Due | 90+ Days Past Due | Amount Due |
|---|---|---|---|---|---|
| 300.00 | 240.00 | 562.11 | 438.78 | 7,704.67 | |

| DATE | ACTIVITY | AMOUNT | BALANCE |
|---|---|---|---|
| 09/24/2014 | Pledge #WATER | 124.03 | 376.02 |
| 09/26/2014 | Payment | -391.02 | -15.00 |
| 09/26/2014 | Pledge #10802 | 15.00 | 0.00 |
| 10/01/2014 | Pledge #ASSES | 251.99 | 251.99 |
| 10/10/2014 | Payment | -251.99 | 0.00 |
| 11/01/2014 | Pledge #ASSES | 251.99 | 251.99 |
| 11/03/2014 | Payment | -251.99 | 0.00 |
| 12/01/2014 | Pledge #ASSES | 251.99 | 251.99 |
| 12/04/2014 | Pledge #WATER NOV | 76.93 | 328.92 |
| 01/01/2015 | Pledge #ASSES | 251.01 | 579.93 |
| 01/15/2015 | Payment #assessment | -579.93 | 0.00 |
| 01/30/2015 | Pledge #WATER JAN | 171.18 | 171.18 |
| 02/01/2015 | Pledge #ASSES | 251.01 | 422.19 |
| 02/09/2015 | Payment | -422.19 | 0.00 |
| 03/01/2015 | Pledge #ASSES | 251.01 | 251.01 |
| 03/20/2015 | Pledge #MAR WATER | 92.65 | 343.66 |
| 04/01/2015 | Pledge #ASSES | 251.01 | 594.67 |
| 04/06/2015 | Payment | -251.01 | 343.66 |
| 05/01/2015 | Pledge #ASSES | 251.01 | 594.67 |
| 05/20/2015 | Pledge #WTR-MAY | 31.03 | 625.70 |
| 05/28/2015 | Payment | -625.70 | 0.00 |
| 06/01/2015 | Pledge #ASSES | 251.01 | 251.01 |
| 06/03/2015 | Receipt #Key Purchas | 15.00 | 251.01 |
| 06/24/2015 | Payment | -251.01 | 0.00 |
| 07/01/2015 | Pledge #ASSES | 251.01 | 251.01 |
| 07/22/2015 | Pledge #WTR-JULY | 113.06 | 364.07 |
| 07/24/2015 | Payment | -364.07 | 0.00 |
| 07/24/2015 | Receipt #MainDoorKey | 15.00 | 0.00 |
| 08/01/2015 | Pledge #ASSES | 251.01 | 251.01 |
| 08/07/2015 | Payment | -251.01 | 0.00 |
| 09/01/2015 | Pledge #ASSES | 251.01 | 251.01 |
| 09/04/2015 | Payment | -251.01 | 0.00 |
| 09/28/2015 | Pledge #WTR-SEP/15 | 149.49 | 149.49 |
| 10/01/2015 | Pledge #ASSES | 251.01 | 400.50 |
| 10/30/2015 | Payment | -400.50 | 0.00 |
| 11/01/2015 | Pledge #ASSES | 251.01 | 251.01 |
| 11/02/2015 | Pledge #RuleViolate | 25.00 | 276.01 |
| 11/13/2015 | Payment | -251.01 | 25.00 |
| 11/13/2015 | Payment | -25.00 | 0.00 |
| 11/16/2015 | Pledge #WATER LEAK | 50.00 | 50.00 |

| Current Due | 1-30 Days Past Due | 31-60 Days Past Due | 61-90 Days Past Due | 90+ Days Past Due | Amount Due |
|---|---|---|---|---|---|
| 300.00 | 240.00 | 562.11 | 438.78 | 7,704.67 | |

| DATE | ACTIVITY | AMOUNT | BALANCE |
|---|---|---:|---:|
| 04/01/2013 | Pledge #ASSES | 242.38 | 261.78 |
| 04/16/2013 | Payment | -261.78 | 0.00 |
| 05/01/2013 | Pledge #ASSES | 242.38 | 242.38 |
| 05/09/2013 | Payment: ASSES | -242.38 | 0.00 |
| 05/29/2013 | Pledge #WATER | 0.00 | 0.00 |
| 06/01/2013 | Pledge #ASSES | 242.38 | 242.38 |
| 06/20/2013 | Payment | -242.38 | 0.00 |
| 07/01/2013 | Pledge #ASSES | 242.38 | 242.38 |
| 07/22/2013 | Pledge #WATER | 0.00 | 242.38 |
| 07/24/2013 | Payment #104 | -700.00 | -457.62 |
| 08/01/2013 | Pledge #ASSES | 242.38 | -215.24 |
| 09/01/2013 | Pledge #ASSES | 242.38 | 27.14 |
| 09/26/2013 | Pledge #WATER | 50.38 | 77.52 |
| 10/01/2013 | Pledge #ASSES | 242.38 | 319.90 |
| 10/11/2013 | Payment #1003 | -319.90 | 0.00 |
| 11/01/2013 | Pledge #ASSES | 242.38 | 242.38 |
| 11/20/2013 | Payment | -242.38 | 0.00 |
| 11/26/2013 | Pledge #WATER | 53.93 | 53.93 |
| 12/01/2013 | Pledge #ASSES | 242.38 | 296.31 |
| 12/05/2013 | Payment | -296.31 | 0.00 |
| 01/01/2014 | Pledge #ASSES | 251.99 | 251.99 |
| 01/24/2014 | Pledge #WATER | 30.56 | 282.55 |
| 02/01/2014 | Pledge #ASSES | 251.99 | 534.54 |
| 02/12/2014 | Payment | -534.54 | 0.00 |
| 03/01/2014 | Pledge #ASSES | 251.99 | 251.99 |
| 03/06/2014 | Payment | -251.99 | 0.00 |
| 03/21/2014 | Pledge #WATER | 26.96 | 26.96 |
| 04/01/2014 | Pledge #ASSES | 251.99 | 278.95 |
| 04/07/2014 | Payment | -278.95 | 0.00 |
| 04/11/2014 | Pledge #ins | 15.00 | 15.00 |
| 05/01/2014 | Pledge #ASSES | 251.99 | 266.99 |
| 05/13/2014 | Payment | -266.99 | 0.00 |
| 05/20/2014 | Pledge #WATER | 32.28 | 32.28 |
| 06/01/2014 | Pledge #ASSES | 251.99 | 284.27 |
| 06/09/2014 | Payment | -284.27 | 0.00 |
| 07/01/2014 | Pledge #ASSES | 251.99 | 251.99 |
| 07/21/2014 | Pledge #WATER | 92.87 | 344.86 |
| 08/01/2014 | Pledge #ASSES | 251.99 | 596.85 |
| 08/27/2014 | Payment | -596.85 | 0.00 |
| 09/02/2014 | Pledge #10749 | 251.99 | 251.99 |

| Current Due | 1-30 Days Past Due | 31-60 Days Past Due | 61-90 Days Past Due | 90+ Days Past Due | Amount Due |
|---:|---:|---:|---:|---:|---:|
| 300.00 | 240.00 | 562.11 | 438.78 | 7,704.67 | |

Belles Terres Homeowners Association
1080 N. Farnsworth Ave.
Aurora, IL 60505



# Statement

TO
MS. GERVAISE GUYTON
vince@keaycostello.com
1110 N. FARNSWORH
UNIT 105
AURORA, IL 60505

STATEMENT NO. 4016
DATE 04/05/2018
TOTAL DUE
ENCLOSED

| DATE | ACTIVITY | AMOUNT | BALANCE |
|---|---|---:|---:|
| 07/31/2012 | Balance Forward | | 75.08 |
| 08/01/2012 | Pledge #ASSES | 258.75 | 333.83 |
| 08/10/2012 | Payment | -333.83 | 0.00 |
| 09/01/2012 | Pledge #ASSES | 258.75 | 258.75 |
| 09/22/2012 | Payment: asess | -258.75 | 0.00 |
| 09/25/2012 | Pledge #WATER | 69.97 | 69.97 |
| 09/27/2012 | Credit Memo #car | -100.00 | -30.03 |
| 10/01/2012 | Payment | -228.72 | -258.75 |
| 10/01/2012 | Pledge #ASSES | 258.75 | 0.00 |
| 11/01/2012 | Pledge #ASSES | 258.75 | 258.75 |
| 11/12/2012 | Payment | -273.75 | -15.00 |
| 11/21/2012 | Pledge #KEY | 15.00 | 0.00 |
| 11/26/2012 | Pledge #WATER | 31.96 | 31.96 |
| 11/28/2012 | Payment | -50.00 | -18.04 |
| 11/28/2012 | Pledge #clubhouse | 50.00 | 31.96 |
| 12/01/2012 | Pledge #ASSES | 258.75 | 290.71 |
| 12/18/2012 | Payment | -290.71 | 0.00 |
| 01/01/2013 | Pledge #ASSES | 242.38 | 242.38 |
| 01/04/2013 | Payment | -242.38 | 0.00 |
| 01/23/2013 | Pledge #WATER | 32.70 | 32.70 |
| 02/01/2013 | Pledge #ASSES | 242.38 | 275.08 |
| 02/18/2013 | Payment | -275.08 | 0.00 |
| 03/01/2013 | Pledge #ASSES | 242.38 | 242.38 |
| 03/14/2013 | Payment: asses | -242.38 | 0.00 |
| 03/22/2013 | Pledge #WATER | 19.40 | 19.40 |

| Current Due | 1-30 Days Past Due | 31-60 Days Past Due | 61-90 Days Past Due | 90+ Days Past Due | Amount Due |
|---|---|---|---|---|---|
| 300.00 | 240.00 | 562.11 | 438.78 | 7,704.67 | |

FILED FOR RECORD
KANE COUNTY, ILL.

1521878      1979 SEP 26 PM 2:45

BOOK 68 OF PLAT PAGE 11 thru 25

Eleanor E. Jungels

See Plats Attached

RECORDER OF DEEDS

## DECLARATION OF CONDOMINIUM OWNERSHIP AND OF BY-LAWS, EASEMENTS, RESTRICTIONS AND COVENANTS FOR BELLES TERRES CONDOMINIUM ASSOCIATION BUILDING NO. 1110

THIS DECLARATION made and entered into by AURORA NATIONAL BANK OF AURORA, a National Banking Association, as Trustee under Trust Agreement dated August 8, 1967, and known as Trust No. 612, referred to as the "Trustee";

**WITNESSETH:**

WHEREAS, the Trustee is the owner of the following described real estate:

> That part of the Northeast quarter of Section 14, Township 38 North, Range 8 East of the Third Principal Meridian, described as follows: commencing at the Northeast corner of said Northeast quarter; thence South along the East line of said quarter Section, 417.06 feet; thence North 89 degrees 30 minutes West, a distance of 426.76 feet to the point of beginning; thence continuing along the last described line a distance of 85.0 feet; thence Southerly along a line parallel with the East line of said Northeast Quarter, a distance of 300.0 feet; thence South 89 degrees 30 minutes East, a distance of 85.0 feet; thence Northerly along a line parallel with the East line of the Northeast Quarter of said Section 14, a distance of 300.0 feet to the point of beginning, in the City of Aurora, Kane County, Illinois.

1521878

and commonly known as 1110 N. Farnsworth Avenue, Aurora, Illinois.

WHEREAS, the above-described real estate is now improved with the following structures:

> (a) One forty-eight (48) unit apartment building consisting of one integral structure commonly known as 1110 N. Farnsworth Ave., Aurora, Illinois

WHEREAS, it is the desire and intention of said Trustee to convert the real estate from its present method of ownership and to enable said real estate together with the building, structural improvements and other permanent fixtures of whatsoever kind thereon, and all rights and privileges belonging or in any wise pertaining thereto, (hereinafter called the "Property"), to be owned by Trustee, under that certain type or method of cooperative ownership, commonly known as "Condominium", and to submit the property to the provisions of the "Condominium Property Act" of the State of Illinois; and,

WHEREAS, Trustee is further desirous of establishing for their own benefit and for the mutual benefit of all future owners or occupants of the property, or any part thereof, certain easements and rights in, over and upon said premises and certain mutually beneficial restrictions and obligations with respect to the proper use, conduct and maintenance thereof; and

Prepared by: Martin Miller
800 Waukegan Rd

1521878

it may deem advisable for the maintenance, conservation and beautification of the development, and for the health, comfort, safety and general welfare of the owners and occupants of said Development. Written notice of such rules and regulations shall be given to all owners and occupants, and the entire Development shall at all times be maintained subject to such rules and regulations.

(o) In the event of any dispute or disagreement between any Unit Owners relating to the Property, or any questions of interpretation or application of the provisions of the Declaration or By-Laws, the determination thereof by the Board shall be final and binding on each and all such Unit Owners.

(p) After the expiration of any initial managing agent agreement, the Board may, after prior approval of the voting members having three-fourths (3/4) of the total votes, engage the services of an agent to manage the property to the extent deemed advisable by the Board.

(q) Nothing hereinabove contained shall be construed to give the Board authority to conduct an active business for profit on behalf of all of the owners or any of them.

## ARTICLE VI
## ASSESSMENTS - MAINTENANCE FUND

1. (a) Each year on or before December 1, the Board shall estimate the total amount necessary to pay the cost of wages, materials, insurance, services and supplies which will be required during the ensuing calendar year for the rendering of all services, together with a reasonable amount considered by the Board to be necessary for a reserve for contingencies and replacements, less any projected income the Board may derive from laundry room facilities and other sources, and supply all proposed unit purchasers prior to conveyance and owners of said units the above described information in such detail as specified by the Illinois Condominium Property Act as amended January 1, 1978. Said "estimated cash requirement" shall be assessed to the owners according to each owner's percentage of ownership in the common elements as set forth in Paragraph 2 of Article III and Exhibit C hereof. On or before January 1 of the ensuing year, and

- 18 -

1521878

the 1st of each and every month of said year, each owner shall be obligated to pay to the Board or as it may direct, 1/12th of the assessment made pursuant to this paragraph. On or before the date of the annual meeting of each calendar year, the Board shall supply to all owners an itemized accounting of the maintenance expenses for the preceding calendar year actually incurred and paid, together with a tabulation of the amounts collected pursuant to the estimates provided, and showing the net amount over or short the actual expenditures plus reserves. Any amount accumulated in excess of the amount required for actual expenses and reserves shall be credited according to each owner's percentage of ownership in the common elements to the next monthly installments due from owners under the current year's estimate, until exhausted and any net shortage shall be added according to each owner's percentage of ownership in the common elements to the installments due in the succeeding six months after rendering of the accounting.

(b) The Board shall build up and maintain a reasonable reserve for contingencies and replacements. Extraordinary expenditures not originally included in the annual estimate which may become necessary during the year, shall be charged first against such reserve. If said "estimated cash requirement" proves inadequate for any reason, including non-payment of any owner's assessment, the Board may at any time levy a further assessment, which shall be assessed to the owners according to each owner's percentage ownership in the common elements. The Board shall serve notice of such further assessment on all owners by a statement in writing giving the amount and reasons therefore, and such further assessment shall become effective with the monthly maintenance payment which is due not more than ten (10) days after the delivery or mailing of such notice of further assessment. All owners shall be obligated to pay the adjusted monthly amount. Any such separate assessments shall be subject to approval by the affirmative vote of at least 75% of the unit owners voting at a meeting of unit owners duly called for the purpose of approving the assessment if it involves proposed expenditures resulting in a total payment assessed to a unit equal to the greater of five times the unit's most recent common-expense assessment calculated on a monthly basis or $500.00. Payment of any assessment shall be in amounts and at times determined by the Board of Managers.

- 19 -

(c) When the first Board elected hereunder takes office, it shall determine the "estimated cash requirement," as hereinabove defined, for the period commencing thirty (30) days after said election and ending on December 31, of the calendar year in which said election occurs. Assessments shall be levied against the owners during said period as provided in Paragraph 1 (a) of this Article.

(d) The failure or delay of the Board to prepare or serve the annual or adjusted estimate on the owner shall not constitute a waiver or release in any manner of such owner's obligation to pay the maintenance costs and necessary reserves, as herein provided, whenever the same shall be determined and in the absence of any annual estimate or adjusted estimate, the owner shall continue to pay the monthly maintenance charge at the then existing monthly rate established for the previous period until the monthly maintenance payment which is due more than ten (1) days after such new annual or adjusted estimate shall have been mailed or delivered.

(e) The Board shall keep full and correct books of account in chronological order of the receipts and expenditures affecting the common elements, and any other expenses incurred. Such records and the vouchers authorizing the payments shall be available for inspection by any owner or any representative of any owner duly authorized in writing, at such reasonable time or times during normal business hours as may be requested by the owners. Upon ten (10) days notice to the Board and payment of a reasonable fee, any owner shall be furnished a statement of his account setting forth the amount of any unpaid assessments or other charges due and owing from such owner.

(f) All funds collected hereunder shall be held and expended for the purposes designated herein, and (except for such special assessments as may be levied hereunder against less than all the owners and for such adjustments as may be required to reflect delinquent or prepaid assessments), shall be deemed to be held for the benefit, use and account of all the unit owners in the percentage set forth in paragraph 2 of Article III hereof.

(g) If an owner is in default in the monthly payment of the afore-

- 20 -

521878

20

said charges or assessments for thirty (30) days, any two or more of the members of the Board may bring suit to enforce collection thereof or to foreclose the lien therefor as hereinafter provided; and there shall be added to the amount due the costs of said suit, together with legal interest and reasonable attorneys fees to be fixed by the Court. To the extent permitted by any decision or any statute or law now or hereafter effective, the amount of any delinquent and unpaid charges or assessments and interests, costs and fees as above provided shall be and become a lien or charge against the unit ownership of the owner involved when payable and may be foreclosed by an action brought in the name of the Board as in the case of foreclosure of liens against real estate. Said lien shall take effect and be in force when and as provided in the "Condominium Property Act" of Illinois; provided, however, that such lien shall be subordinate to the lien of a prior recorded first mortgage or trust deed on the interest of such Unit Owner, owned or held by a bank, insurance company, savings and loan association, or other lender except for the amount of the proportionate share of common expenses which become due and payable from and after the date on which the said mortgage owner or holder either takes possession of the Unit, accepts a conveyance of any interest therein (other than as security), files suit to foreclose its mortgage, or causes a receiver to be appointed. Any encumbrancer may from time to time request in writing a written statement from the Board setting forth the unpaid common expenses with respect to the unit covered by his encumbrance and unless the request shall be complied with within twenty (20) days, all unpaid common expenses which become due prior to the date of the making of such request shall be subordinate to the lien of such encumbrance.

    (h) Amendments to this Article VI shall only be effective upon unanimous written consent of the owners, and their mortgagees. No owner may waive or otherwise escape liability for the assessments provided for herein by nonuse of the common elements or abandonment of his or her unit.

- 21 -

1521878

21